Brett H. Ramsaur, Bar No. 281566
RAMSAUR LAW OFFICE
2183 Fairview Road, Suite 221
Costa Mesa, California  92627
Telephone:	949.200.9114
Facsimile:	714.835.8897
Email:	brett@ramsaurlaw.com

Counsel for the Debtor and
Debtor-in-Possession, The 17/21 Group, LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>THE 17/21 GROUP, LLC, a California limited liability company,<br><br>    Debtor. | Case No. 2:18-bk-13300-RK<br><br>Chapter 11<br><br>**NOTICE OF MOTION AND MOTION FOR ISSUANCE OF ORDER DIRECTING NOBEL TEXTILE, INC. AND ITS COUNSEL, NICO TABIBI OF LAW OFFICES OF NICO N. TABIBI, APC, TO SHOW CAUSE WHY THEY SHOULD NOT BE HELD IN CIVIL CONTEMPT FOR WILLFUL VIOLATION OF THE AUTOMATIC STAY; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[No hearing required for issuance of order to show cause per Local Bankruptcy Rule 9020-1(d)(2)] |

**TO THE HONORABLE ROBERT N. KWAN, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE AND OTHER PARTIES-IN-INTEREST:**

   **PLEASE TAKE NOTICE** that The 17/21 Group, LLC, a California limited liability company, the debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Debtor"), by and through its undersigned counsel Ramsaur Law Office, hereby respectfully moves the court (the "Motion") for issuance of an order directing directing Nobel Textile, Inc.

("Nobel") and its counsel, Nico Tabibi of Law Offices of Nico N. Tabibi, APC ("Tabibi," and collectively with Nobel, "Respondents"), to show cause ("OSC") why the Court should not hold them in civil contempt for willful violation of the automatic stay imposed by section[1] 362. In particular, to remedy the damages suffered by the bankruptcy estate as a result of Respondents' willful violation of the automatic stay, the Debtor respectfully requests that this Court enter an OSC as to why:

    1.    Respondents should not be held in contempt for their willful violation of the automatic stay for their post-petition prosecution of a state court proceeding commenced against the Debtor in Los Angeles County Superior Court;

    2.    Respondents should not be sanctioned $9,983[2], jointly and severely, for their willful violation of the automatic stay; and

    3.    The Debtor should not be granted any other such relief that is appropriate.

The Motion is based upon this Notice, the Memorandum of Points and Authorities, the Declarations of Brett H. Ramsaur and Michael Davis, the arguments of counsel to be made at the hearing on the OSC and all other admissible evidence properly before the Court.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to LBR 9020-1(b), Respondents shall have seven (7) court days to object to the issuance of the order to show cause in the form concurrently lodged herewith.

**PLEASE TAKE FURTHER NOTICE** that, upon approval of the OSC, the clerk will issue and forward to the Debtor the OSC setting the date and time of the contempt trial. Unless the OSC provides otherwise, the Debtor shall serve the OSC and the moving papers on

---

[1] Unless otherwise indicated, all "Code," "chapter," and "section" references are to Title 11 of the United States Code (the "Bankruptcy Code"), 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure ("FRBP") which make applicable certain Federal Rules of Civil Procedure ("FRCP").

[2] This figure represents the total damages, including attorneys' fees and costs, incurred through October 24, 2018. As also outlined in the supporting declaration of Brett H. Ramsaur, the Debtor respectfully requests the opportunity and reserves the right to supplement the total damage figure to include any and all fees and costs incurred from and after October 25, 2018, to fully and finally prosecute this Motion and accompanying OSC.

1 | Respondents not later than twenty-one (21) days before the date set for the hearing. *See* LBR

2 | 90201-1(e)(1).

3 |     **PLEASE TAKE FURTHER NOTICE** that the Court may deem the failure of any party

4 | to object to the Motion to constitute consent to the relief sought by the Movant.

Dated: October 25, 2018                 RAMSAUR LAW OFFICE

By: /s/ Brett H. Ramsaur
     Brett H. Ramsaur

Counsel for the Debtor and
Debtor-in-Possession, The 17/21 Group, LLC

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Because of Nobel's and Tabibi's egregious violations of the automatic stay, the Debtor has suffered damages and is forced to distribute less money to unsecured creditors through this bankruptcy case than it otherwise would but for Nobel's and Tabibi's conduct.  Indeed, despite having actual knowledge of the bankruptcy filing and being repeatedly asked to stop, Nobel and Tabibi continued to prosecute a state court lawsuit and writ of attachment/attachment lien proceeding against the Debtor and its senior secured creditor, Milberg Factors of California, Inc. ("Milberg"), after the Debtor filed for bankruptcy.  The court cannot tolerate this type of conduct. Nobel and Tabibi must be held in contempt and must reimburse the bankruptcy estate to remediate the monetary damage.

## II.

## FACTUAL BACKGROUND

**A.    The state court litigation and attachment lien**

On January 12, 2018, Tabibi, on behalf of Nobel, initiated an action against the Debtor and its principal, Michael Geliebter, in Los Angeles County Superior Court, thereby commencing case no. BC689916 (the "Nobel Action").  In the Nobel Action, Nobel sought to collect an alleged prepetition debt of $21,394.15.[3]

As part of its prejudgment remedy strategy, Nobel and Tabibi sought and obtained, on an *ex parte* basis, a right to attach order and writ of attachment against the Debtor in the total amount of $31,394.15 (comprising $21,394.15 in principal and $10,000 in estimated attorneys' fees and costs).  Nobel thereafter levied the writ of attachment against the Debtor's assets, including its accounts receivable, and allegedly obtained an attachment lien under applicable law (the "Nobel Lien").[4]

---

[3]    *See* Declaration of Brett H. Ramsaur ("Ramsaur Decl.") ¶ 2.
[4]    *Id*. at ¶ 3.

- 4 -    MOTION FOR ISSUANCE OF OSC

Because of Nobel's attempts to enforce the Nobel Lien against the Debtor's assets, the Debtor's secured creditor, Milberg—who holds a perfected lien in the Debtor's assets, including receivables, from as early as 2009 (the "Milberg Lien")—intervened in the Nobel Action and filed a third-party claim to preserve its lien against Nobel's collection efforts.[5]

On March 5, 2018, Nobel filed a petition for a hearing on the merits of Milberg's third-party claim, which Nobel then set for hearing on April 2, 2018. Nobel sought a determination regarding the competing lien rights of Milberg and Nobel and repeatedly argued that Milberg's claim lacked merit and was not supported by competent evidence.[6]

**B.    The interim bankruptcy filing and Respondents' actual notice thereof**

On March 26, 2018—one week prior to the hearing on Nobel's objection to Milberg's third-party claim—the Debtor filed a voluntary chapter 11 petition.[7]

On March 28, 2018, the Debtor's counsel directly notified Tabibi of the commencement of Debtor's bankruptcy case and insisted that Respondents cease all activities relating to the enforcement of the Writ of Attachment and the Nobel Lien.[8]

On March 29, 2018, Tabibi confirmed that Respondents knew of the Debtor's bankruptcy case by filing a notice of bankruptcy stay in the Nobel Action but, notwithstanding the stay, Respondents insisted that the hearing on the third-party claim proceed.[9]

During that same week, Milberg's counsel repeatedly requested that Tabibi stipulate to take the hearing on the claim objection off calendar, explaining that prosecuting the objection to the third-party claim would constitute a violation of the automatic stay. Respondents flatly refused.[10]

---

[5]   *Id*. at ¶ 4; Declaration of Michael Davis ("Davis Decl.") ¶ 3, Ex. A.
[6]   Ramsaur Decl. at ¶ 5; Davis Decl. ¶¶ 3-4, Exs. A, B.
[7]   Ramsaur Decl. at ¶ 6.
[8]   Ramsaur Decl. at ¶ 7, Ex. 1.
[9]   Ramsaur Decl. at ¶ 8; Davis Decl. ¶ 5, Ex. C.
[10]  Davis Decl. at ¶ 6, Ex. D.

1  Because Nobel and Tabibi refused to stop prosecuting the Nobel Action and its enforcement proceeding, on April 2, 2018, the Superior Court conducted the hearing on Nobel's objection. Despite the court's initial insistence to take the hearing off calendar and set a status conference regarding status of the Debtor's bankruptcy case in January 2019, Respondents strenuously objected and continued to press for a continued hearing at which Respondents could enforce the Nobel Lien.[11]

To date, the Debtor has suffered damages in the amount of $9,983, comprising (1) $3,900 in attorneys' fees and costs incurred by Milberg's counsel to defend itself in the Nobel Action against the violative post-petition actions and prepare the necessary declaration for this Motion;[12] and (2) $6,083 in attorneys' fees and costs incurred by the Debtor's counsel to both defend the Debtor against the violative post-petition actions and to prosecute the instant Motion for sanctions for civil contempt for such violation.[13]

///

///

///

---

[11]  *Id*. at ¶ 7, Ex. E.

[12]  But for Respondents' conduct, the Debtor would have been entitled to turnover under section 542 of all such monies incurred by Milberg for the stay violations. Indeed, under applicable law, Milberg is required to turnover all excess monies held on reserve, less any amounts incurred for attorneys' fees and costs in connection with the collection of any outstanding indebtedness under the subject loan documents. Thus, because unsecured creditors will not be paid in full in this matter, every dollar that is paid to administrative claimants and secured creditors reduces the distribution to general unsecured creditors. As such, had Milberg not incurred the completely unnecessary attorneys' fees and costs to defend against Respondents' unlawful actions, Milberg would have turned over thousands more to the Debtor for distribution to unsecured creditors herein. Similarly, if the Debtor's counsel did not have to defend against such actions and prosecute this Motion, even more money would be available for distribution as well.

[13]  The fees and costs figure of $6,083 herein represents only those fees and costs incurred through October 24, 2018. The Debtor respectfully requests and reserves the right to supplement the total fees and costs figure for any and all fees and costs incurred from and after October 25, 2018, to fully and finally prosecute this Motion and rectify Nobel's and Tabibi's conduct.

## III.

## **THE COURT SHOULD HOLD RESPONDENTS IN**

## **CONTEMPT FOR VIOLATING THE AUTOMATIC STAY**

**A.     The Court has the power to enforce orders through contempt proceedings**

Pursuant to 11 U.S.C. § 105(a), a bankruptcy court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  In fact, a bankruptcy court has original and exclusive jurisdiction to enforce its own orders.  See *In re Birting Fisheries, Inc.*, 300 B.R. 489, 499 (9th Cir. BAP 2003).  This grant of authority includes the power to impose sanctions for civil contempt. *See Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1188 (9th Cir. 2011); *In re Lehtinen*, 332 B.R. 404, 412 (9th Cir. BAP 2005).  The purpose of civil contempt is to coerce compliance with a court order or to compensate another party for losses caused by violation of a court order.  *International Union, UMWA v. Bagwell*, 512 U.S. 821, 827-28 (1994).  Civil contempt sanctions are remedial, not punitive.  *See In re Dyer*, 322 F.3d 1178, 1192 (9th Cir. 2003).  The injunction arising from the automatic stay is an "order" of the Court that can that can be enforced through a contempt proceeding.  *Id.* at 1189-92.  Federal Rule of Bankruptcy Procedure 9020 provides that a motion for a contempt order is governed by Federal Rule of Bankruptcy Procedure 9014 (i.e., contested matters) and may be initiated by any "party in interest."  Fed. R. Bankr. P. 9020; *Barrientos*, 633 F.3d at 1189.

**B.     Respondents willfully violated the automatic stay**

The filing of a chapter 11 petition automatically stays the commencement of any act to obtain possession of, or enforce a lien against, property of the debtor or of the estate.  11 U.S.C. §§ 362(a)(3) and (4) provide:

> Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, ... ***operates as a stay, applicable to all entities***, of- ....(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; (4) any act to create, perfect, or enforce any lien against property of the estate. . .

11 U.S.C. § 362(a)(4)-(5) (emphasis added).  *See also*, *In re Pettit*, 217 F.3d 1072, 1077 (9th Cir. 2000); *Hillis Motors, Inc. v. Hawaii Automobile Dealers' Ass'n*, 997 F.2d 581, 585 (9th Cir.

1993); *In re Dyer*, 322 F.3d 1178, 1182 (9th Cir. 2003) (finding violation of automatic stay for post-petition recording of deed of trust); *In re RW Meridian LLC*, 564 B.R. 21, 28 (B.A.P. 9th Cir. 2017) (confirming that "It stays 'any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate' and also 'any act to ... enforce any lien against property of the estate.' § 362(a)(3), (4).").

Parties have an affirmative duty to not violate the automatic stay. Moreover, if a party learns that it has violated the automatic, then it has an affirmative duty to take corrective action to undue any harm caused. *Dyer*, 322 F.3d at 1191. If a party fails or refuses to expeditiously remedy the harm caused by its violation of the automatic stay, then the party can (and should) be held in contempt. *Id.*

The Ninth Circuit explained the requirements for holding a party in civil contempt for violating the automatic stay:

> In determining whether the contemnor violated the stay, the focus is not on the subjective beliefs or intent of the contemnors in complying with the order, but whether in fact their conduct complied with the order at issues.
> The threshold standard for imposing a civil contempt sanction in the context of an automatic stay violation therefore dovetails with the threshold standard for awarding damages under § 362(h) [now §362(k)]. . . . Under both statutes, the threshold question regarding the propriety of an award turns not on a finding of "bad faith" or subjective intent, but rather on a finding of "willfulness," where willfulness has a particularized meaning in this context:
> [W]illful violation does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional.

*Dyer*, 322 F.3d at 1191 (internal citations and certain quotation marks omitted).

Here, Respondents willfully violated the automatic stay. By insisting that the objection to the third-party claim proceed, Respondents unequivocally sought to enforce Nobel's Lien against the Debtor's assets and have it determined to be superior to the Milberg Lien. By seeking a determination from the Superior Court regarding the competing lien rights regarding the Debtor's assets and the propriety of its attachment lien, Nobel clearly violated the automatic stay.

Moreover, Respondents cannot claim that the stay violation was an innocent act for at least three major reasons. First, the Debtor's counsel directly notified Tabibi on March 28, 2018, that the Debtor had filed bankruptcy on March 26, 2018—well before Tabibi and Nobel took the subject actions. Second, Tabibi himself filed a notice of stay with the state court. Last, Milberg's counsel repeatedly informed Tabibi that the continued post-petition prosecution of the Nobel Action violated the automatic stay and was unlawful (even worse, at the hearing, Tabibi sought a continuance instead of removal from calendar). Thus, it is undisputed that Respondents attempted to enforce the Nobel Lien with actual knowledge of the Debtor's bankruptcy case and the attendant automatic stay. Such actions clearly constitute a "willful" violation of the automatic stay.

**C.     The Debtor is entitled to damages**

Under its contempt powers, the court may order a party to pay the aggrieved debtor compensatory damages, plus attorneys' fees and costs, as sanctions for violating the automatic stay. *Dyer*, 322 F.3d. 1189-95.

Here, the Court is authorized to award, and should award, damages to compensate the Debtor (and the bankruptcy estate) for the harm caused by Respondents' willful violation of the automatic. As set forth in the attached declarations of Brett Ramsaur and Michael Davis, Respondents' insistence on asserting Nobel's Lien at a post-petition hearing resulted in Milberg having to defend the action. To do so, Milberg's counsel incurred $3,900 in fees and costs and, under the applicable contractual obligations between Milberg and the Debtor, Milberg is entitled to recover all its fees and costs from the bankruptcy estate. Thus, unsecured creditors receive a smaller distribution as administrative costs and secured claims increase. Respondents' willful violation of the automatic necessarily harmed and continues to harm the Debtor and the bankruptcy estate by, among other things, diminishing the return to creditors.

The Debtor therefore seeks a recovery of $9,983, which includes the amounts charged to the bankruptcy estate by Milberg and Debtor's attorneys' fees and costs incurred in bring this contested proceeded.

## IV.

## **CONCLUSION**

The Debtor respectfully requests this Court to enter an OSC as to why Respondents: (1) should not be held in civil contempt of court for willfully violating the automatic; (2) should not be sanctioned in the amount of $9,983; and (3) granting other and such further relief that the Court deems just and proper.


Dated: October 25, 2018               RAMSAUR LAW OFFICE


                                      By: /s/ Brett H. Ramsaur
                                          Brett H. Ramsaur

                                      Counsel for the Debtor and
                                      Debtor-in-Possession, The 17/21 Group, LLC

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
2183 Fairview Road, Suite 221, Costa Mesa, CA 92627

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF MOTION AND MOTION FOR ISSUANCE OF ORDER DIRECTING NOBEL TEXTILE, INC. AND ITS COUNSEL, NICO TABIBI OF LAW OFFICES OF NICO N. TABIBI, APC, TO SHOW CAUSE WHY THEY SHOULD NOT BE HELD IN CIVIL CONTEMPT FOR WILLFUL VIOLATION OF THE AUTOMATIC STAY; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**, will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) October 25, 2018, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

US Trustee's Office:  ustpregion16.la.ecf@usdoj.gov; Hatty.Yip@usdoj.gov
Attorneys for Debtor:  Brett Ramsaur:  brett@ramsaurlaw.com
Interested Party Milberg Factors Inc.:  Reagan E Boyce:  rboyce@bg.law; ecf@bg.law
Creditor Nobel Textiles Inc.:  Nico N Tabibi:  nico@tabibilaw.com
Interested Party:  Eric S Pezold:  epezold@swlaw.com; kcollins@swlaw.com
Interested Party:  Michael S Greger:  mgreger@allenmatkins.com; kpreston@allenmatkins.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*)  October 25, 2018, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

| | | |
|---|---|---|
| The 17/21 Group, LLC<br>PO Box 1108<br>Simi Valley, CA 93062-1108<br>*Debtor* | Nobel Textile, Inc.<br>Attn Masoud Enayati<br>721-A 9th Street<br>Los Angeles, CA 90021<br>*Agent for Service of Process* | Nico N. Tabibi<br>Law Offices of Nico N. Tabibi, APC<br>9454 Wilshire Blvd. Penthouse 14<br>Beverly Hills, CA 90212<br>*Attorneys for Nobel Textile, Inc.* |

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) October 25, 2018, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

The Honorable Robert N. Kwan         Via Overnight Delivery
United States Bankruptcy Court
255 E Temple Street, Suite 1682
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 25, 2018 | Martha E. Araki | */s/ Martha E. Araki* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                               **F 9013-3.1.PROOF.SERVICE**